<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUCIANO BARRAGAN, individually and as a representative of a class of participants and beneficiaries on behalf of the Honeywell 401(k) Plan,<br><br>    Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., and DOES 1 to 10 inclusive,<br><br>    Defendants. | No. 24cv4529 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

    Plaintiff Luciano Barragan ("Barragan") brings this putative class action against his former employer, Honeywell International Inc. ("Honeywell"), for alleged ERISA[1] violations when Honeywell used "forfeited" employer contributions to a retirement plan to reduce employer contributions rather than to pay administrative costs. D.E. 1 ("Complaint" or "Compl."). Honeywell moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). D.E. 45 ("Motion"), 45-1 ("Br."). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78(b). For the following reasons, the Court will **GRANT** Honeywell's Motion and **DISMISS** the Complaint *without prejudice*.

---

[1] Employee Retirement Income Security Act.

I.  **BACKGROUND**[2]

Honeywell is a global technology and manufacturing company that sponsors and administers a 401(k) plan (D.E. 45-3, the "Plan").[3] Compl. ¶ 5. The Plan is a defined contribution, individual account, employee pension benefit plan subject to ERISA. *Id.* ¶ 4. Under ERISA, an individual account or defined benefit plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts or other participants which may be allocated to such participant's account." *Id.* ¶ 11 (quoting 29 U.S.C. § 1002(34)). The Plan is funded by both wage withholdings of participants and company contributions. *Id.* ¶ 10. The Plan's administrative expenses are paid through direct charges to Plan participants' accounts. *Id.* ¶ 12; Plan § 14.5.

Plan participants "are immediately vested in their own contributions and earnings thereon," while Honeywell's contributions are subject to a three-year vesting period. Compl. ¶ 14; Plan §§ 7.1-2. When a participant has a break in service prior to full vesting of Honeywell's matching contributions, the participant forfeits the balance of Honeywell's unvested matching contributions in the participant's individual account. Compl. ¶ 15; Plan § 7.3. These unvested contributions are the "forfeited" amounts. Compl. ¶ 15. The Plan provides that:

> Forfeited amounts may be applied to reduce subsequent Employer Matching Contributions, Discretionary Supplemental Employer Contributions, Qualified

---

[2] The facts in this section are taken from the well-pled factual allegations in the Complaint, which the Court presumes to be true for purposes of resolving the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] The Court may consider the Plan as an indisputably authentic document that is explicitly relied upon and integral to the Complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

> Nonelective Contributions, or Qualified Matching Contributions provided for under the Plan, to defray administrative expenses of the Plan, to correct errors made in allocating amounts to Participants' Accounts, to restore Participants' Accounts in accordance with this Section, or for any other purpose permitted under IRS rules.

Plan § 7.3. Barragan alleges that Honeywell used forfeited matching contributions "solely to reduce Company contributions to the Plan." Compl. ¶ 17.

## II. PROCEDURAL HISTORY

On February 13, 2024, Barragan initiated this lawsuit, seeking to represent a class of participants and beneficiaries of the Plan in challenging Honeywell's usage of forfeited contributions from 2018 through 2022. *See id.* ¶¶ 18-22, 25. Barragan raises five claims under ERISA: (1) breach of the fiduciary duty of loyalty, 29 U.S.C. §1104(a)(1)(A); (2) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (3) breach of the anti-inurement provision, 29 U.S.C. § 1103(c)(1); (4) prohibited transactions between the plan and a party in interest, 29 U.S.C. § 1106(a)(1); and (5) prohibited transactions by the fiduciary dealing in assets of the plan in its own interest, 29 U.S.C. § 1106(b)(1). Compl. ¶¶ 29-57. Honeywell now moves to dismiss the Complaint. Mot. Barragan opposes. D.E. 49 ("Opp'n"). Honeywell replies. D.E. 52 ("Reply").[4]

## III. LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain

---

[4] The Court has also considered Barragan's notice of supplemental authority, D.E. 55, and Honeywell's response, D.E. 57.

statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Finally, "[c]ourts may also consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (cleaned up).

IV.   ANALYSIS

   A.   The Complaint Alleges Honeywell Acted as a Fiduciary

Honeywell argues that Barragan fails to establish ERISA's threshold requirement that Honeywell acted as a fiduciary when deciding how to allocate forfeited amounts because such decisions were made in Honeywell's settlor capacity, not fiduciary capacity. Br. at 19-21. Barragan counters that "decisions made while administering, as opposed to designing, a plan may trigger fiduciary duties." Opp'n at 12. The Court agrees with Barragan.

The threshold question in cases charging breaches of ERISA fiduciary duties is whether "the actions of some person employed to provide services under a plan" was acting as a fiduciary "when taking the action subject to complaint." *Pegram v. Hedrich*, 530 U.S. 211, 226 (2000). This

4

requirement "is rooted in the text of ERISA's definition of fiduciary." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).

> ERISA provides:
>
> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The "rules regarding fiduciary capacity—including the settlor-fiduciary distinction—[] apply to pension and welfare plans alike." *Spink*, 517 U.S. at 891.

When defining the scope of fiduciary duties under ERISA, courts have drawn a distinction between the actions taken as a fiduciary and those taken as a settlor. Fiduciary duties "consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see also John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993) ("[A]ctions in regard to [plan assets'] management and disposition must be judged against ERISA's fiduciary standards"). In contrast, decisions made "regarding the form or structure of the Plan" qualify as settlor duties. *Hughes Aircraft*, 525 U.S. at 444; *see also Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("'Settlor' functions, in contrast, include conduct such as establishing, funding, amending, or terminating a plan.").

The Court finds the decision to allocate forfeited amounts constitutes a fiduciary, not settlor, function. Although the Court agrees with Honeywell that the Plan *terms* are design decisions made in a settlor capacity, Br. at 19; Plan § 7.3, Barragan challenges Honeywell's *decision* to *use* forfeited amounts to reduce employer contributions rather than a different authorized option. Barragan alleges Honeywell "continuously breached th[e] duty of loyalty . . .

5

by utilizing forfeited funds in the Plan for the benefit of the Company rather than solely in the interest of the participants and beneficiaries." Compl. ¶ 31. Additionally, Barragan alleges Honeywell has "continuously breached their duty of prudence . . . by failing to use the forfeited funds in the plan to eliminate or reduce the administrative expenses charged to participant accounts and instead using such Plan assets to reduce the Company's own contributions to the Plan." *Id.* ¶ 37. As such, Barragan attacks Honeywell's decision to utilize one of the options allowed in the Plan (reduce employer contributions), rather than another permitted option (reduce the administrative expenses charged to participants' accounts). *Walling v. Brady*, 125 F.3d 114, 119-20 (3d Cir. 1997) (noting that when an "administrator is making a choice reserved to it by the plan document in administering the plan, not tinkering with the document itself," the employer "assume[s] fiduciary status"). Accordingly, the Court finds that Barragan has sufficiently alleged Honeywell acted as a fiduciary.

### B. Barragan Fails to Allege Breaches of Fiduciary Duties[5]

Honeywell argues that it has not breached any fiduciary duties (Counts I and II) because it complied with the Plan and U.S. Department of Treasury regulations. Br. at 21-24. Barragan

---

[5] The Court disagrees with Honeywell that U.S. Department of Treasury regulations bar Barragan's theory of liability. Br. at 10-16. 26 C.F.R. § 1.401-7(a) provides, in pertinent part, that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan." However, 26 C.F.R. § 1.401-7(a) does not apply to stock bonus plans, like the Plan. *See* Rev. Rul. 71-313, 1971-2 C.B. 203 (1971) (stating 26 C.F.R. § 1.401-7 "does not extend to profit-sharing and stock bonus plans"); Plan § 1.4; *Finnerty v. Stiefel Labs., Inc.*, 756 F.3d 1310, 1323 (11th Cir. 2014) ("[S]tock bonus plans are considered defined contribution pension plans."). Additionally, a proposed regulation permitting forfeitures to reduce employer contributions, *see* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023), does not foreclose liability as it applies only to "plan years beginning on or after January 1, 2024," and Barragan challenges the use of forfeited amounts from 2018 to 2022. *See id.* at 12284; Compl. ¶¶ 18-22, 25; *see also Doe v. Princeton Univ.*, No. 18-16539, 2019 WL 161513, at *8 (D.N.J. Jan. 9, 2019) ("Proposed Regulations are merely proposals and do not have the force of law.").

counters that the Complaint adequately pleads claims for breach regardless of whether Honeywell complied with the terms of the Plan. Opp'n at 15-22. The Court agrees with Honeywell.

A claim for fiduciary breach has three elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007), *as amended* (Dec. 21, 2007). As noted *supra*, the Complaint adequately alleges Honeywell acted as a fiduciary. With respect to the second element, ERISA imposes a duty of loyalty, *see* § 1104(a)(1)(A), and a duty of prudence, *see* § 1104(a)(1)(B).

Specifically, in accordance with the duty of loyalty, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," "provid[e] benefits to participants and their beneficiaries," and "defray[] reasonable expenses of administering the plan." § 1104(a)(1)(A). ERISA fiduciaries are also held to the "prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). Furthermore, fiduciaries are required to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." § 1104(a)(1)(D).

The parties seem to agree that § 7.3 of the Plan authorized Honeywell's decision to allocate forfeited amounts to reduce employer contributions. *See* Opp'n at 15; Reply at 9. Rather, the parties dispute whether the allocation of forfeited amounts to reduce employer contributions, as opposed to defraying administrative expenses, violates the fiduciary duties of loyalty and

prudence. The parties do not cite any binding authority addressing this theory, nor has the Court found any. Instead, they rely on out-of-circuit, non-precedential opinions.[6]

The Court finds *Hutchins* persuasive and agrees that "Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible." 2024 WL 3049456, at *6. The crux of Barragan's allegations is that *any* time a fiduciary is given the option to use forfeited amounts to either reduce employer contributions or pay administrative costs, the fiduciary *must* choose the latter. "But the flaw in such a theory is that it is not limited to any particular circumstances that may be present in this case." *Id.*

In *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 418-19 (2014), the Supreme Court held that there is no presumption of prudence favoring fiduciaries in employee stock ownership plans ("ESOP").[7] It emphasized that "the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Id.* at 425 (quoting § 1104(a)(1)(B)). The Supreme Court rejected as implausible "allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock." *Id.* at 426. But the Court left open the possibility that the plaintiff might "point[] to a special circumstance affecting the reliability of the market price . . . that would make reliance on the market's valuation imprudent." *Id.* at 427.

The Court agrees with the *Hutchins* court that "Plaintiff's theory is in tension with the Supreme Court's analysis in *Dudenhoeffer*, which emphasizes that the plausibility of allegations

---

[6] D.E. 55 (Barragan's supplemental authority of *Rodriguez v. Intuit Inc.*, No. 23-5053, 2024 WL 3755367 (N.D. Cal. Aug. 12, 2024)); Reply at 2 (citing *Hutchins v. HP Inc.*, No. 23-5875, 2024 WL 3049456 (N.D. Cal. June 17, 2024); *Perez-Cruet v. Qualcomm Inc.*, No. 23-1890, 2024 WL 2702207 (S.D. Cal. May 24, 2024)).

[7] An ESOP is "a type of pension plan that invests primarily in the stock of the company that employs the plan participants." *Dudenhoeffer*, 573 U.S. at 412.

of breach of fiduciary duty should consider the context and circumstances of the fiduciary's actions." *Hutchins*, 2024 WL 3049456, at *6. Barragan's broad theory would "require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances." *Id.* Accordingly, the Court will **DISMISS** Barragan's breach of the duty of loyalty and duty of prudence claims (Counts I and II) ***without prejudice***. *See Dudenhoeffer*, 573 U.S. at 427 ("We do not here consider whether a plaintiff could nonetheless plausibly allege imprudence on the basis of publicly available information by pointing to a special circumstance affecting the reliability of the market price."); *Hutchins*, 2024 WL 3049456, at *7 (granting leave to amend to narrow breach of fiduciary claims).

    **C.**    **Barragan Fails to Allege a Violation ERISA's Anti-Inurement Provision**

ERISA's anti-inurement provision provides that, absent specific enumerated exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C § 1103(c)(1). Honeywell argues Barragan fails to state a violation of the provision (Count III) as the forfeited amounts have not been removed from the Plan and are merely reallocated to provide other Plan participants with benefits. Br. at 24-28. Barragan counters that Honeywell's use of forfeited amounts violates the anti-inurement provision because it is using the Plan assets to forgive its debts to the Plan. Opp'n at 22-26. The Court finds Barragan's argument unpersuasive.

The provision "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants." *Hughes Aircraft*, 525 U.S. at 442; *see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004) ("The [anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants."). "'[T]he legislative history involving the [anti-inurement provision] indicates congressional concern over

the wrongful diversion of trust assets and the administrative integrity of benefit plans.'" *Wolk v. Unum Life Ins. of Am.*, 186 F.3d 352, 358 (3d Cir. 1999) (quoting *Prudential Ins. Co. v. Doe*, 76 F.3d 206, 209 (8th Cir. 1996)). When a plaintiff "do[es] not allege that [the defendant] used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, [the defendant] could not have violated the anti-inurement provision." *Hughes Aircraft*, 525 U.S. at 443. In *Hughes Aircraft*, the Supreme Court held that an employer did not violate the anti-inurement provision when it used surplus plan assets "from the contributory structure to add the noncontributory structure" because the plan assets were used "for the sole purpose of paying pension benefits to Plan participants" and the employer "satisfied its continuing obligation under the provisions of the Plan and ERISA to assure that the Plan was adequately funded." *Id.* at 442.[8]

Here, the Complaint alleges that the forfeited amounts were utilized "as a substitute for the Company's own contributions to the Plan," indicating they remain part of the Plan assets and are used to benefit the Plan's beneficiaries. Compl. ¶ 45. Essentially, Barragan alleges the forfeitures, which remain in the Plan, fund Honeywell's contribution obligations for other Plan participants. As these forfeited amounts do not leave the Plan and are used to satisfy Honeywell's obligations according to the Plan's language, the Court finds Honeywell is not acting in violation of the anti-

---

[8] Like the *Hutchins* court, this Court disagrees that *Hughes Aircraft* is distinguishable because it "considered a defined benefit plan, which does not give participants any entitlement to a plan's surplus funds," rather than a defined contribution plan. 2024 WL 3049456, at *8 (citing *Perez-Cruet*, 2024 WL 2702207, at *4)). Participants of defined contribution plans are entitled "to 'whatever assets are dedicated to his individual account.'" *Id.* (quoting *Hughes Aircraft*, 525 U.S. at 439). "This entitlement does not include forfeited amounts from the accounts of other participants unless they are allocated to the participant's account." *Id.* (citing 29 U.S.C § 1002(35)). As such, a defined contribution account does not automatically entitle a participant to forfeited amounts unless specifically allocated to the account and *Hughes Aircraft*'s treatment of surplus amounts is persuasive.

10

inurement provision.[9]  Accordingly, the Court will **DISMISS** Count III *without prejudice*. *See Hutchins*, 2024 WL 3049456, at *9 (granting the plaintiff leave to amend to "allege further facts showing that forfeited amounts were reverted or diverted to HP and/or that forfeited amounts were used to offset outstanding and unpaid obligations.").

### D.  The Complaint Fails to Allege Claims for Prohibited Transactions

Finally, Honeywell argues Barragan's claims for prohibited transactions under § 1106(a)(1) and (b)(1) (Counts IV and V) fail because he fails to allege a transaction between the Plan and another party; rather, Barragan only alleges that "forfeitures stay in the Plan and are reallocated to other participant accounts to provide benefits under the Plan's terms," which "is neither 'prohibited' nor a transaction'" under ERISA.  Br. at 28-29.  Barragan argues he has alleged a transaction by asserting Honeywell has "used forfeited funds in the Plan as a substitute for Honeywell's required contributions."  Opp'n at 27 (cleaned up).  Additionally, Barragan argues he has stated a claim for self-dealing as § 1106(b)(1) does not require a transaction.  *Id.* at 29-30.

Section 1106(a) "erects a categorical bar to transactions between the plan and a 'party in interest' deemed likely to injure the plan."  *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012).  Relevant here, § 1106(a)(1) provides:

---

[9] The Court finds Barragan's authorities inapposite, as they focus on instances where employers used plan assets to forgive an employer's debts to the plan.  *See* Opp'n at 23-25.  For example, *Holland ex rel. UMWA 1992 Benefit Plan v. Arch Coal*, 947 F.3d 812 (D.C. Cir. 2020) involved an employer's requirement under the Coal Industry Retiree Health Benefit Act ("Coal Act") "to provide security to a pension benefit plan after a successor to the plan filed for bankruptcy." *Hutchins*, 2024 WL 3049456, at *8 (citing *id.* at 814-15, 819).  The court in *Chao v. Malkani*, 452 F.3d 290, 297 (4th Cir. 2006) found the defendant employer's request for reimbursement violated the anti-inurement provision because it would have "[o]btain[ed] [p]lan assets for contributions made many years in the past."  These cases, in sum, involved outstanding and unpaid amounts that were owed by the respective defendants.  Here, Barragan does not allege Honeywell has failed to pay any amounts owed to Plan participants.  Rather, Barragan argues "[w]hen Honeywell allocated forfeitures to reduce its contributions in years 2018 to 2022, 'old money' already in the Plan was recycled and substituted for 'new money' that was supposed to come into the Plan." Opp'n at 26.

11

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

Additionally, § 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." This prohibition applies "regardless of whether the transaction is 'fair' to the plan." *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995). The purpose of Section 1106(b) is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Id.* at 287 (quoting H.R. Conf. Rep. No. 93-1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5089). Therefore, in order to allege a violation of either § 1106(a)(1) or (b)(2), the Complaint must allege an unlawful transaction. *See Spink*, 517 U.S. at 888.

The Complaint fails to plausibly allege a prohibited transaction. In *Spink*, the Supreme Court expressly stated that "the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term in § 406(a)." 517 U.S. at 892-93. Rather, the types of "commercial bargains" set forth in Section 1106(a) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.* at

12

893. The Court expressed these "'transactions' . . . generally involve uses of plan assets that are potentially harmful to the plan." *Id.*

As stated above, the allegations demonstrate that the forfeited amounts remain as Plan assets and are reallocated to other Plan participants. Additionally, the allegations do not fall within the categories the Supreme Court cautioned about because Barragan does not allege any facts indicating the reallocation of the forfeited amounts exposed the Plan to "a special risk of plan underfunding." *Id.*

Barragan urges the Court to rely upon *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152 (1993). Opp'n at 28. However, *Keystone* is distinguishable as it dealt with a traditional commercial transaction. 508 U.S. at 158-59. In *Keystone*, the defendant employer contributed five truck terminals and a Key West, Florida real property to a defined benefit plan to satisfy its funding obligation. *Id.* at 153-55, 158. The Supreme Court held this constituted a "sale or exchange" prohibited by the Internal Revenue Code because it involved "the transfer of property in satisfaction of a debt." *Id.* at 159. Furthermore, Barragan urges the Court to find Section 1106(b) does not require allegations of a transaction, but fails to cite any binding authority. Opp'n at 29-30.

Accordingly, the Court will **DISMISS** Counts IV and V *without prejudice*.

V. **CONCLUSION**

For the above reasons, the Court will **GRANT** Defendant's Motion, D.E. 45, and **DISMISS** the Complaint, D.E. 1, *without prejudice*. An appropriate Order follows.

Dated: 12/19/2024

Evelyn Padin, U.S.D.J.