<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUCIANO BARRAGAN, individually and as a representative of a class of participants and beneficiaries on behalf of the Honeywell 401(k) Plan,<br><br>    Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., and DOES 1 to 10 inclusive,<br><br>    Defendants. | No. 24cv4529 (EP) (JRA)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Luciano Barragan ("Barragan") brings this putative class action against his former employer, Honeywell International Inc. ("Honeywell"), for alleged ERISA[1] violations when Honeywell used "forfeited" employer contributions to a retirement plan to reduce employer contributions rather than to defray administrative costs. D.E. 72 ("Amended Complaint" or "Am Compl."). Honeywell moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). D.E. 75 ("Motion" or "Mot"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court will **GRANT** Honeywell's Motion and **DISMISS** the Amended Complaint *with prejudice*.

---

[1] Employee Retirement Income Security Act 29 U.S.C. 1001, *et. seq.*

I.  **BACKGROUND**[2]

The allegations in the Amended Complaint are substantially similar to those in the Initial Complaint, D.E. 1, and the Court refers to its Prior Opinion, D.E. 70, for a full factual background. The Court briefly summarizes the relevant facts here.

Honeywell is an engineering and technology company that sponsors and administers a 401(k) plan (the "Plan"). Am. Compl. ¶¶ 3, 6; Mot., Ex A (the "Plan"). The Plan is a defined contribution, individual account, employee pension benefit plan subject to ERISA. Am. Compl. ¶ 4. Under ERISA, an individual account or defined benefit plan "provides for an individual account for each participant and for benefits [based] solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." *Id.* ¶ 13 (quoting 29 U.S.C. § 1002(34)). The Plan is funded by both wage withholdings of participants and company contributions. *Id.* ¶ 12. The Plan's administrative expenses are paid through direct charges to Plan participants' accounts. *Id.* ¶ 14.

Plan participants "are immediately vested in their own contributions and earnings thereon," while Honeywell's contributions are subject to a three-year vesting period. *Id.* ¶ 16. When a participant has a break in service prior to full vesting of Honeywell's matching contributions, the unvested contributions are forfeited and Honeywell, in its discretion, decides how the Plan assets are reallocated. *Id.* ¶ 17.

The Plan gives Honeywell "options" as to how to reallocate forfeitures, including but not limited to defraying administrative expenses of the Plan; reducing Honeywell's contributions to

---

[2] The facts in this section are taken from the well-pled factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

the Plan; and correcting errors made in allocating amounts to participants' accounts and restoring participants' accounts. *Id.* ¶¶ 18-20. Using forfeitures to defray administrative expenses is in the Plan participants' best interests because it reduces or eliminates the administrative expenses deducted from their accounts. *Id.* ¶ 21. However, using forfeitures to reduce Honeywell's contributions to the Plan is in Honeywell's best interest because it saves the company money. *Id.* ¶ 22. Barragan alleges that Honeywell—who has a conflict of interest in choosing between available options that it stands to benefit from financially—failed to investigate which available option was in the best interest of Plan participants. *Id.* ¶¶ 23-24. In doing so, Honeywell acted in its own self-interest by using all forfeitures to reduce its own contributions. *Id.* ¶ 28.

## II.    PROCEDURAL HISTORY

On February 13, 2024, Barragan initiated this lawsuit, seeking to represent a class of participants and beneficiaries of the Plan in challenging Honeywell's usage of forfeited contributions from 2018 through 2022. *See* Initial Complaint. Barragan raised five claims under ERISA: (1) breach of the fiduciary duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); (2) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (3) breach of the anti-inurement provision, 29 U.S.C. § 1103(c)(1); (4) prohibited transactions between the plan and a party in interest, 29 U.S.C. § 1106(a)(1); and (5) prohibited transactions by the fiduciary dealing in assets of the plan in its own interest, 29 U.S.C. § 1106(b)(1). *Id.* ¶¶ 29-57.

Honeywell moved to dismiss the Initial Complaint, arguing that its discretionary decision to use forfeitures to pay administrative costs did not violate the Plan terms or ERISA's fiduciary provisions. *See* D.E. 45. In briefing, both parties relied on out-of-circuit, non-precedential opinions to support their positions. Prior Opinion at 7-8. In the absence of binding authority, the Court adopted the persuasive reasoning in *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 862 (N.D.

Cal. 2024), which found the theory of liability proffered by Barragan to be overly broad. *Id.* at 8-9. It then dismissed *without prejudice* Barragan's Initial Complaint. D.E. 71.

The Amended Complaint followed, again alleging a breach of fiduciary duty of loyalty (Count I); breach of fiduciary duty of prudence (Count II), and self-dealing under 29 U.S.C. § 1106(b) (Count III). Am. Compl. ¶¶ 42-60. Honeywell now moves to dismiss the Amended Complaint. Mot. Barragan opposes. D.E. 77 ("Opp'n"). Honeywell replies. D.E. 78 ("Reply").

## III.   LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal marks omitted). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, the plaintiff's claims must be facially plausible, meaning that the well-pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In deciding the motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

IV.    ANALYSIS

    A.    **Barragan Again Fails to Allege Honeywell Breached Fiduciary Duties**

A claim for fiduciary breach has three elements: "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007), *as amended* (Dec. 21, 2007). The Court's Prior Opinion found that Barragan adequately alleged that Honeywell acted as a fiduciary. Prior Opinion at 4-6. The Court adopts that ruling, which Honeywell does not dispute. With respect to the second element, ERISA imposes a duty of loyalty, *see* § 1104(a)(1)(A), and a duty of prudence, *see* § 1104(a)(1)(B).

In accordance with the duty of loyalty, a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," "provid[e] benefits to participants and their beneficiaries," and "defray[] reasonable expenses of administering the plan." § 1104(a)(1)(A). ERISA fiduciaries are also held to the "prudent man" standard of care, which requires fiduciaries to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." § 1104(a)(1)(B). Furthermore, fiduciaries are required to discharge their duties with respect to a plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." § 1104(a)(1)(D).

The Plan authorizes Honeywell's decision to "defray administrative expenses of the Plan" through application of forfeited amounts. Plan § 7.3. The Plan also mandates that "[a]ll costs and expenses of administering the Plan . . . shall be borne by the Participants and paid from their Accounts in the Plan." *Id.* § 14.5. Barragan does not dispute this. And in reviewing the Amended Complaint against the Initial Complaint, Barragan does not add allegations that Plan participants

5

received less than their full promised contributions; instead, he further details Honeywell's purported conflict of interest and the resulting reduction in Plan contributions due to Honeywell's reduction of its own contribution costs. Am. Compl. ¶¶ 23-29, 52-54. Barragan's second bite at the apple, therefore, turns on a slight variation of the same legal theory this Court already found implausible: when a fiduciary has the discretion to allocate forfeitures, ERISA requires it to choose the "best" option for Plan participants. Opp'n at 2. The parties again do not cite any binding authority addressing this theory, nor has the Court found any.

Honeywell implores this Court to follow the holding in *Hutchins v. HP Inc.*, 2025 WL 404594 (N.D. Cal. Feb. 5, 2025) ("*Hutchins II*"), the decision following the one this Court previously found persuasive and adopted. Prior Opinion at 8 (citing *Hutchins*, 737 F. Supp. 3d at 862) ("Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible."). The Court in *Hutchins II* again rejected plaintiff's theory of liability, finding "under Plaintiff's theory, in every plausible instance where HP, as fiduciary, would be given the option between using forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would always be required to choose to pay administrative costs. That result would be contrary to the Plan and to ERISA." 2025 WL 404594, at *5.

Barragan asks the Court to follow, among others, a different decision in that same district: *McManus v. Clorox Co.*, No. 23-5325, 2025 WL 732087, at *4 (N.D. Cal. Mar. 3, 2025) ("*McManus II*") ("Plaintiff's argument that defendants were motivated solely by self-interest and conducted no reasoned and impartial decision-making process is plausible given that no other justification is readily apparent. This is sufficient for the Court to infer that defendants are liable for the misconduct alleged because courts look to motivation for loyalty claims and the thoroughness of an investigation for prudence claims."). But as the court in *McManus II* observed,

6

the theory put forth by Barragan "presents a novel interpretation of ERISA on which there is no binding authority. Reasonable minds can differ, and several district courts do." *Id.* at *1.

Reasonable minds do differ, and this Court already found that Barragan's theory was too broad in reach. Prior Opinion at 8. Barragan provides no reason for the Court to change course. Barragan's theory effectively imposes a new mandate: even though Honeywell has discretion on how to use forfeitures, because defraying administrative costs is not in the "participants' best interests," as compared to other Plan options, it could *never* be the appropriate selection. Opp'n at 9. In doing so, Barragan argues that Honeywell "effectively intended to create an additional benefit: that in any year in which there were forfeitures, those forfeitures would first be used to reduce administrative expenses for individual Plan participants." *Hutchins II*, 2025 WL 404594, at *4. That is not what the plain terms of the Plan state. Plan § 7.3. Such a theory would result in an override of § 14.5 of the Plan, mandating that administrative costs are to be borne by Plan participants.[3]

The Court declines to implement this position, because "ERISA does not create an exclusive duty to maximize pecuniary benefits," *Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998) (per curiam), and "[i]nstead, the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits," *Hutchins II*, 2025 WL 404594, at *5 (citing *Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989)). As Honeywell points out, Barragan makes no allegations that Honeywell failed to abide by the Plan or that any participant received less than promised. Mot. at 21. The Plan participants received all benefits promised and Honeywell adhered

---

[3] Section 14.5 of the Plan indicates Honeywell's intent as settlor in determining how expenses are paid, while Section 7.3's discretionary power in how to allocate forfeitures falls to Honeywell as the Plan's fiduciary. *See Hutchins II*, 2025 WL 404594, at *4.

7

to the Plan's provisions, consistent with ERISA's "requirement that fiduciaries act 'in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.'" *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (quoting § 1104(a)(1)(D)). Moreover, the Court fails to see how selection of an option afforded to Honeywell in its discretion, without more, constitutes a "conflict of interest." Am. Compl. ¶ 23; *see Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir. 2018) ("[T]he potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty."). Accordingly, the Court finds that Barragan again fails to state a breach of duty of loyalty claim.

As to a purported breach of duty of prudence, Barragan alleges that Honeywell "utilized an imprudent and flawed process" and "failed to undertake any reasoned and impartial decision-making process to determine that using the forfeitures in the Plan to reduce the Company's own contribution expenses, as opposed to the Plan's administrative expenses deducted from participants' accounts, was in the best interest of the participants or was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors." Am. Compl. ¶ 52. Barragan again asks the Court to follow the decision in *McManus II*, Opp'n at 11, while Honeywell avers that *Hutchins II* should govern, Mot. at 26; the undersigned opts for the latter.

Barragan's Amended Complaint does not change the alleged breach of the duty of prudence; it still boils down to alleging that Honeywell necessarily committed misconduct in its fiduciary capacity by not using forfeitures in Barragan's preferred manner. Barragan wraps this theory up in allegations that the misconduct involves Honeywell's purported failure to investigate what the best use of the forfeitures was, Opp'n at 11, but functionally, what he contends is that "forfeitures must always be used to pay Plan participants' administrative expenses before they can

8

be allocated to reducing a company's matching contributions." *Hutchins II*, 2025 WL 404594, at *7. Section 14.5 of the Plan mandates that administrative costs are borne by participants and Section 7.3 affords Honeywell the discretion on how to use forfeitures, including to defray administrative costs. Absent allegations that participants were deprived of benefits to which they were entitled under the Plan, Barragan "fails to plausibly allege that a 'proper' investigation would have led to a different outcome." *Hutchins II*, 2025 WL 404594, at *7. The Court will dismiss this claim as well.

      B.      **Barragan Again Fails to Allege a Claim Under § 1106(b)(1)**

Section 1106(b)(1) prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." This prohibition applies "regardless of whether the transaction is 'fair' to the plan." *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995). The purpose of Section 1106(b) is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Id.* at 287 (quoting H.R. Conf. Rep. No. 93-1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5089). Barragan argues that Honeywell violated § 1106(b)(1) because it used "Plan assets as a substitute for Honeywell's own contributions owing to the Plan, thereby saving the Company millions of dollars in contribution costs[.]" Am. Compl. ¶ 58.

The Court previously dismissed Barragan's claims for prohibited transactions under §§ 1106(a)(1) and (b)(1). Prior Opinion at 11. In finding that Barragan failed to allege a transaction between the Plan and another party, it relied on the Supreme Court's holding in *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) that "the payment of benefits in exchange for the performance of some condition by the employee is not a 'transaction' within the meaning of § 406(a)(1)." *Id.* As

9

such, "in order to allege a violation of either § 1106(a)(1) or (b)(2), the Complaint must allege an unlawful transaction." Prior Opinion at 12. Barragan again has not done so here.

Barragan seizes the Court's prior observation that he failed to identify any binding authority holding that no transaction needs to be pled for a § 1106(b)(1) claim as an invitation to try the theory again. Opp'n at 20-21. He argues that the Court should not "read-in" Section 1106(a)(1)'s transaction requirement into Section 1106(b)(1) based on the statute's plain text. *Id.* But the Court fails to see how *Lockheed* would not also apply to Section 1106(b)(1), when the Supreme Court "has interpreted *§ 1106* to "prohibit [] fiduciaries from involving the plan and its assets in certain kinds of business deals." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) (quoting *Lockheed*, 517 U.S. at 888)) (emphasis added). And here, again, Barragan "fail[s] to identify any transaction that falls within § 1106(a)(1) or (b)." *Id.* at 1101. Accordingly, the Court will dismiss this claim.

As Barragan has already been afforded an opportunity to amend, and it is clear survival of his claims hinges on the Court adopting a non-binding legal theory it has found to be unpersuasive, the Amended Complaint's dismissal will be **with prejudice**. *See Phillips*, 515 F.3d at 236.

V.   **CONCLUSION**

For the above reasons, the Court will **GRANT** Honeywell's Motion, D.E. 75, and **DISMISS** the Amended Complaint, D.E. 72, **with prejudice**. An appropriate Order follows.

Dated: August 18, 2025

*[signature]*
Evelyn Padin, U.S.D.J.